1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CARLOS PEREZ-CALDERON,

               Petitioner,

      v.

MELISSA ANDREWJESKI, Superintendent,
Coyote Ridge Corrections Center,

            Respondent.

CASE NO. 3:22-cv-5119-JHC

ORDER

This matter comes before the Court on Petitioner's Objections to Magistrate's Report and Recommendation. Dkt. # 21. Having considered the Report and Recommendation (Dkt. # 17), the Objections thereto, and the remaining record, the Court ADOPTS the conclusions of the Report and Recommendation with modifications to its reasoning as outlined below, DENIES Petitioner's habeas petition, and DENIES a certificate of appealability.

Petitioner Carlos Perez-Calderon filed his federal habeas petition under 28 U.S.C. § 2254, seeking relief from his state court conviction and sentence for murder in the second degree. Dkt. # 1. Petitioner raised three grounds in his Petition: (1) that he was deprived of his Sixth Amendment right to present a defense because the trial court excluded a witness's testimony on another witness's prior inconsistent statement, (2) that his appellate counsel was ineffective for failing, on direct appeal, to raise his claim that he was denied the right to present a complete

ORDER - 1

defense, and (3) that his trial counsel was ineffective for failing to argue during closing argument that the lack of testing for gunpowder residue on Petitioner's hands created a reasonable doubt that he committed the offense. *Id.* at 5. Magistrate Judge David Christel issued a Report and Recommendation (Report) concluding that "the state courts' adjudication of the three grounds raised in the Petition was not contrary to, or an unreasonable application of, clearly established federal law." Dkt. # 17 at 1. Petitioner filed objections to the Report and Recommendation. Dkt. # 21. The Court addresses each objection below:[1]

        1. Citation to *Jammal* and *Reiger* (Objections A and B)

        Petitioner objects to the Report's citations to *Jammal v. Van de Kamp,* 926 F.2d 918 (9th Cir. 1991) and *Reiger v. Christensen,* 789 F.2d 1425 (9th Cir. 1986), because they predate the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) and do not involve Sixth Amendment claims for right to present a complete defense. Dkt. # 21 at 2. Plaintiff argues that the Report applies the incorrect, pre-AEDPA standard in analyzing his claim. *Id.*

        Petitioner is correct that the AEDPA established a new habeas standard and authorizes relief only if a petitioner shows that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). But the Report does not misapply this standard. To the contrary, it recognizes that the AEDPA standard governs, citing both 28 U.S.C. § 2254(d)(1) and *Williams v. Taylor,* 529 U.S. 362, 405 (2000) (in which the Supreme Court defined "contrary to"). Dkt. # 17 at 6–7. The Report cites *Jammal* or *Reiger* only to support general rule statements about its scope of review that were not superseded by the statute. *See, e.g.*, Dkt. # 17 at 8 ("Initially, the Court notes that it does not 'review questions of state evidence

---

[1] All of Petitioner's objections relate to Ground 1 (violation of the right to present a complete defense, referred to in Petitioner's briefing as Ground 2).

law.  On federal habeas [the Court] may only consider whether the petitioner's conviction violated constitutional norms.'" (citing *Jammal,* 926 F.3d at 919)).  The mere fact that the Report cites pre-AEDPA caselaw does not undermine its conclusions.  Post-AEDPA cases continue to cite *Jammal* and *Reiger* for general propositions that remain good law, such as the proposition that a violation of state evidence law is neither necessary nor sufficient to warrant habeas relief. *See, e.g.*, *Demetrulias v. Davis*, 14 F.4th 898, 907 (9th Cir. 2021) ("[I]t is certainly possible to have a fair trial even when state standards are violated" (citing *Jammal*, 926 F.2d at 919)).

The Court acknowledges that *Jammal* and *Reiger* involve due process claims rather than Sixth Amendment claims, making the Report's citations to their discussions of "fundamental fairness" not directly applicable here.  *See* Dkt. # 17 at 10 (stating that the issue before the Court is whether the trial court "committed an error which rendered the trial so arbitrary and fundamentally unfair that it violated due process" (citing *Jammal,* 926 F.2d at 919 and *Reiger*, 789 F.2d at 1430)).  More accurately stated, the question before the Court is whether the trial court's exclusion of the testimony in question deprived Petitioner of a meaningful opportunity to present a complete defense.  *See Holmes v. South Carolina,* 547 U.S. 319, 319 (2009).  But as discussed below, Petitioner's argument fails regardless of whether it is framed as a due process claim or a Sixth Amendment claim.

2.   State versus federal law (Objection C)

Petitioner states in his Objections that he "has never argued that he is entitled to habeas relief because there was a violation of a state evidence rule."  Dkt. # 21 at 3.  The Report acknowledges this, stating, "here Petitioner invokes *federal law considerations* . . ."  Dkt. # 17 at 9 (emphasis added).  It appears the Report simply mentions the distinction between state and federal law to clarify the scope of its review, since the Washington Court of Appeals observed

that "the trial court likely relied on ER 613(b)." *Id.* at 15 (citing Dkt. # 12-1 at 51–52).  But the Report agrees with Petitioner that he raises constitutional issues.

3.    Application of the *Holmes* test (Objections D, E, and F)

Petitioner argues that, because he brings a claim for denial of the right to present a complete defense, the Report should have applied the test established in *Holmes v. South Carolina,* 547 U.S. 319 (2009).  Dkt. # 17 at 20–21.  The Court agrees that the Report does not correctly apply the *Holmes* test, despite citing the case's holding.  *See* Dkt. # 21 at 9.  But Petitioner's claim fails under this test.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky,* 476 U.S. 683, 690 (1986).  When a petitioner claims that a state court's application of an evidentiary rule violates this right, courts must weigh the state's legitimate interests served by that evidentiary rule against the petitioner's interest in presenting the evidence in support of his defense.  *Holmes,* 547 U.S. at 324 (the right to present a complete defense "is abridged by evidence rules that infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve.").  Courts have held that the application of a state evidentiary rule violated a petitioner's constitutional rights when there was no legitimate state interest served by the rule.  *See, e.g.*, *Crane*, 476 U.S. at 691 (evidentiary rule prohibiting evidence to challenge the reliability of defendant's confession violated the Sixth Amendment because the state offered no justification for the rule).  But "[o]nly rarely [has the Supreme Court] held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (internal citations omitted).  *But see Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)

("[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, [evidentiary rules] may not be applied mechanistically to defeat the ends of justice.").

Petitioner says the state court violated his right to present a defense because it excluded evidence of a witness's prior inconsistent statement. [2]  Dkt. # 1 at 5; *see* Dkt. # 12–1 at 990–95. The trial court reasoned that it did not "think there is anything that is being impeached or being offered to impeach [the] statement or [MC's] testimony through what has been presented . . . in this offer of proof." *Id.* at 995.  The Washington State Court of Appeals affirmed and held that the trial court properly considered that Petitioner "failed to establish the foundation required to admit the statement as a prior inconsistent statement . . . which suggests that the trial court relied on ER 613(b)." Dkt. # 12-1 at 52.[3]  The Court therefore weighs the state's interests served by ER 613(b) against the Petitioner's interest in presenting Detective Punzalan's testimony in support of his defense.  *Holmes,* 547 U.S. at 324.

As to the state's interests served by ER 613(b), the requirement for foundational evidence to impeach a witness serves an important purpose.  *See, e.g.*, *State v. Horton,* 116 Wash. App. 909, 915, 68 P.3d 1145 (2003) ("The foundation requirement was designed to give the witness a fair chance to explain any circumstances, such as duress or influence, that might excuse the

---

[2] The witness, M.C., was the victim's minor daughter who was in the house at the time of the shooting. Dkt. # 12–1 at 40–41.  In April 2016 in an interview by defense counsel, and later at trial, she stated that she heard Petitioner tell her mother to "bend down" before she heard a gunshot. *Id.* at 42, 894–95.  There is no documentation that M.C. mentioned the "bend down" statement in a June 2015 interview with Detective Reynaldo Punzalan (13 days after the shooting), or to two chaplains who transported her to the police station after the shooting. *Id.* at 41–42, 44.  Petitioner sought to cross-examine Detective Punzalan about M.C.'s omission of the "bend down" statement in the June 2015 interview in an effort to impeach M.C. Dkt. # 12-1 at 989-95.  The trial court barred the proposed examination. *Id.* ("[Defense counsel] had an opportunity to question the child while she was here.  She took the stand.  He could have gone into all that with her.  He didn't.  This is not an inconsistent statement.  It is merely a different set of information that she gave.").

[3] Washington Evidence Rule 613(b) requires that "[e]xtrinsic evidence of a prior inconsistent statement by a witness [not be admitted] unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."

inconsistency; to reconcile the statements by explaining why they were not really inconsistent; or to deny having made the statement at all. The foundation requirement was also intended to require that the impeacher seek first to authenticate the inconsistent statement through the witness who made it. In many cases, this would obviate the need to call another witness to authenticate the statement"); *see also United States v. Bibbs,* 564 F.2d 1165, 1169 (5th Cir. 1997) ("The traditional practice of requiring a foundation to be laid during cross-examination of the witness to be impeached had three objectives: (1) to avoid unfair surprise by giving the opposite party an opportunity to draw a denial or an explanation from the witness on redirect examination; (2) to give the witness himself an opportunity to deny or to explain the apparent discrepancy; and (3) to save time" (discussing FRE 613(b)); *cf State v. Johnson,* 90 Wash. App. 54, 70, 950 P.2d 981 (1998) (holding that ER 613(b) incorporates the Federal Rules' foundational standard). As to Petitioner's interests, the Court recognizes that he had a legitimate interest in presenting evidence to the jury regarding M.C.'s unreliability as a witness. But the Court also notes that he was not precluded from doing so, as he had the opportunity to cross-examine her on this topic and chose not to. *See* Dkt. # 12–1 at 989–95 ("[Defense counsel] had an opportunity to question the child while she was here . . . He didn't").[4] In light of this fact, and in weighing the state's interests served by ER 613(b) against the Petitioner's interest in presenting Detective Punzalan's testimony in support of his defense, the Court concludes that the trial court's application of the rule did not infringe on Petitioner's rights in an arbitrary or disproportionate manner.

    4.   Reliance on *Arndt* (Objection G)

    Petitioner argues that the state court relied on an erroneous interpretation of *State v. Arndt,* 294 Wash. 2d 784, 453 P.3d 696 (2019). Dkt. # 21 at 9–11. In *Arndt,* the Washington

---

[4] Petitioner was also able to question the two chaplains who spoke with M.C. just after the shooting as to her omission of the "bend down" statement in their conversations. *Id.* at 44.

State Supreme Court held that various evidentiary rulings by the trial court did not violate defendant's right to a fair trial, relying heavily on the fact that the rulings did not limit her ability to advance her theory of the case. *Id.* at 814. The Washington State Supreme Court later clarified that, though the *Arndt* court had focused on the fact that the evidentiary rulings did not eliminate defendant's "entire defense," this was not the sole basis for its holding. *State v. Jennings,* 199 Wash. 2d 53, 64, 502 P.3d 1255 (2022). Instead, *Jennings* explains that the *Arndt* court correctly applied the *Hudlow* balancing test, which instructs courts to balance "the defendant's right to produce relevant evidence versus the state's interest in limiting the prejudicial effects of that evidence." *State v. Hudlow,* 99 Wash.2d 1, 4–5, 659 P.2d 514 (1983).

Petitioner points to the following passage in the Court of Appeals' decision:

> *Arndt* is instructive here. In *Arndt,* our Supreme Court held that the trial court's evidentiary rulings did not violate the appellant's right to present a defense because the rulings did not eliminate the defendant's entire defense, and she was still able to advance the defense theory of the case.

Dkt. # 21 at 9 (citing Dkt. # 12–1 at 428). According to Petitioner, this passage incorrectly assumes that *Arndt* endorsed the "entire defense" rule, when in reality that rule was abrogated by *Jennings. Id.* at 9–10. But as the Washington Supreme Court pointed out in its Ruling Denying Discretionary Review, Petitioner "overstates the Court of Appeals holding. Its reliance on *Arndt* was justified here, where the defense had failed to allow MC to explain the alleged inconsistent statement and where the defense was still able to point to the omission with respect to MC's statements to other trial witnesses to whom she spoke just after the shooting." Dkt. # 12–1 at 506–7. The Court agrees with the Washington State Supreme Court. In analogizing Petitioner's case to *Arndt,* the Court of Appeals did not endorse the "entire defense" rule but simply recognized that a defendant's interest in presenting evidence is diminished where they can still present their central theory of the case.

5.   Harmless error standard (Objections H, I, and J)

The Report states, "[v]iewing the evidence as a whole, regardless of any alleged error in failing to admit evidence of MC's prior inconsistent statement through Det. Punzalan's testimony, that error was harmless." Dkt # 17 at 16–17.  Petitioner contends this "harmless error" conclusion is based on a conflation of argument and evidence.  Dkt. # 21 at 11–13.  He also argues that the Report does not apply the correct harmless error standard established in *Brecht v. Abrahamson,* 507 U.S. 619 (1993), and instead focuses only on the "ample evidence of Petitioner's guilt." Dkt. # 21 at 13–16.

The Report states, "[i]n his closing defense counsel argued . . . that MC did not make the 'bend down' statement during her June 2015 forensic interview, but rather made it for the first time in April 2016." Dkt. # 17 at 15.  Petitioner asserts that defense counsel's ability to argue the June 2015 omission in closing was meaningless because the jury was instructed to disregard counsel's statements that were not supported by evidence.  Dkt. # 21 at 12–13 (citing WPIC 1.02, which was given to the jury).  The Court agrees that defense counsel's statement during closing argument that M.C. omitted the "bend down" statement in her June 2015 interview did not serve as a fair substitution for Detective Punzalan's excluded testimony.  But given the other evidence presented to the jury, any claimed error in failing to admit Detective Punzalan's testimony was still harmless under the *Brecht* standard.

Under *Brecht*, a constitutional error is not harmless "if the constitutional error had a 'substantial and injurious effect or influence' on the jury verdict or trial court decision." *Brecht,* 507 U.S. at 623.  This standard is met if the record raises "grave doubts" about whether the error influenced the jury's decision. *See generally O'Neal v. McAninch,* 513 U.S. 432 (1995).  As mentioned above, the Court concludes that no constitutional error occurred.  But even if there had been an error, it would not have had a substantial and injurious effect on the jury verdict.

First, it is debatable whether a jury would have even perceived the omission to be probative of unreliability. *See United States v. Hale*, 422 U.S. 171, 176 (1975) ("In most circumstances silence is so ambiguous that it is of little probative force"); *Jenkins v. Anderson,* 447 U.S. 231, 231 (1980) (a witness's previous silence on a given fact is only probative of unreliability if that fact "naturally would have been asserted"). Second, M.C. spoke with two pastors directly after the shooting, and both testified at trial that she did not mention the "bend down" statement. Dkt. # 12–1 at 44. Petitioner pointed to this omission in closing arguments and was therefore able to argue that M.C. was an unreliable witness. *Id.* at 48–49. In light of this fact, it is unlikely that admission of Detective Punzalan's testimony about a very similar omission would have tipped the scales so strongly in Petitioner's favor that he would have been acquitted. And lastly, as the Report mentions, the state presented overwhelming evidence of Petitioner's guilt. *See, e.g.*, Dkt. # 12–1 at 45–47 (prosecution presented expert testimony that the gun's "drop safety" prevented it from firing unless the trigger was pulled with at least seven and a quarter pounds of force). Viewing the evidence as a whole, and applying the *Brecht* standard, the Court finds that any alleged constitutional error would not have had a substantial and injurious effect or influence on the jury's decision. The Report's harmless error conclusion is thus valid.

For these reasons, Petitioner's objections to the Report and Recommendation do not persuade the Court that he should be granted habeas relief. The Court therefore ADOPTS the conclusions of Report, as well as its reasoning to the extent that it does not conflict with this order, DENIES Petitioner's habeas petition, and DENIES a certificate of appealability.

//

//

//

//

1    Dated this 5th day of May, 2023.

2

3

4                                         John H. Chun
                                          United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER - 10